FILED

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

99 APR 13 AM 9: 12

U.S. DISTRICT COURT
N.D. OF ALABAMA

| | | |
|---|---|---|
| MARTHA PASCHAL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | CV-97-BU-1902-S |
| | ) | |
| WILLIAM J. HENDERSON, in his official | ) | |
| capacity as the POSTMASTER | ) | |
| GENERAL/CEO of the United States | ) | |
| Postal Service, | ) | |
| | ) | |
| Defendant. | ) | |

ENTERED

APR 13 1999

MEMORANDUM OPINION

The case is presently pending before this Court on Motion to Dismiss, Motion to Strike, and/or, in the alternative, Motion for Summary Judgment, filed by the Defendant William J. Henderson, in his official capacity as the Postmaster General/CEO of the United States Postal Service. (Doc. 16) The Court has reviewed the record and determined that the Motion is due to be granted in part and denied in part.

SUMMARY JUDGMENT STANDARD

Summary judgment provides the parties an opportunity to test the mettle of a case before it ever reaches trial. On a motion for summary judgment, the court assesses all of the proof the parties bring to bear in order to ascertain whether there is a genuine need for a trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986)(quoting Advisory Committee Note to 1963 Amendment to Fed. R. Civ. P. 56(e)). Summary

28

judgment is appropriate only if the court concludes that no genuine issue of material fact exists and

that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *see Anderson*

*v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S. Ct. 2505, 2511, 91 L. Ed. 2d 202 (1986); *Celotex*

*Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986).

A party seeking summary judgment has the initial responsibility of informing the court of

the grounds for its motion and specifically identifying those portions of the pleadings, depositions,

answers to interrogatories, admissions on file, and any affidavits that it believes demonstrate the

absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323, 106 S. Ct. at 2553; *Clark v.*

*Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). The moving party's burden is not meager;

it must illuminate for the court the reasons why the non-moving party cannot or does not raise a

genuine issue of material fact sufficient to support a trial. *Clark*, 929 F.2d at 608. The moving

party's burden was set forth in *Clark* as follows:

> The moving party bears the initial burden to show the district court, by reference to
> materials on file, that there are no genuine issues of material fact that should be
> decided at trial. Only when that burden has been met does the burden shift to the non-
> moving party to demonstrate that there is indeed a material issue of fact that
> precludes summary judgment. *Celotex* did not change the general rule. *Celotex*
> simply holds that under certain circumstances the movant may meet its Rule 56
> burden without negating an element of the non-moving party's claim and that under
> such circumstances it is sufficient to point to materials on file that demonstrate that
> the party bearing the burden of proof at trial will not be able to meet that burden.
> Even after *Celotex* it is never enough to simply state that the non-moving party
> cannot meet its burden at trial.

*Id.* (citing *Celotex*, 477 U.S. at 323-25, 106 S. Ct. 2553-54).[1]

---

[1]The Eleventh Circuit recognized that *Celotex* created "an exception to the *Adickes*
[*Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 90 S. Ct. 1598, 26 L. Ed. 2d 142 (1970)] rule for
[an] uncommon situation," i.e., "when neither party could prove either the affirmative or the
negative of an essential element of the claim." *Clark*, 929 F.2d at 607, 608. In this "uncommon

Once the moving party has satisfied this initial burden, however, the nonmoving party "must make a sufficient showing to establish the existence of each essential element to that party's case, and on which that party will bear the burden of proof at trial." *Howard v. BP Oil Company*, 32 F.3d 520, 523 (11th Cir. 1994). "Rule 56(e) . . . requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324, 106 S. Ct. at 2553 (quoting Fed. R. Civ. P. 56(e)); *see Cottle v. Storer Communication, Inc.*, 849 F.2d 570, 575 (11th Cir. 1988). However, "Rule 56 . . . does not impose upon the district court a duty to survey the entire record in search of evidence to support a non-movant's opposition." *Id.*; *see also Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir.) ("There is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment."), *cert. denied sub nom. Jones v. Resolution Trust Corp.*, 516 U.S. 817, 116 S. Ct. 74, 133 L. Ed. 2d 33 (1995).

In resolving whether a given factual dispute requires submission to a jury, the court must inspect the presented evidence through the looking glass of each party's substantive evidentiary burden. *Anderson*, 477 U.S. at 254-55, 106 S. Ct. at 513. The court, however, must not weigh conflicting evidence for probity or make credibility determinations. *Welch v. Celotex Corp.*, 951 F.2d 1235, 1237 (11th Cir. 1992). "It is not part of the court's function, when deciding a motion for summary judgment, to decide issues of material fact, but rather determine whether such issues exist

situation," the *Celotex* exception allows a moving party to carry its burden by showing or "pointing out," by reference to record, that the non-moving party cannot prove its claim. *Id.* at 607.

to be tried.   The court must avoid weighing conflicting evidence or making credibility

determinations." *Hairston v. Gainesville Sun Publishing Co.*, 9 F.3d 913, 919 (11th Cir.

1993)(citations omitted).  At the same time, "[t]he nonmoving party must provide more than a mere

scintilla of evidence to survive a motion for judgment as a matter of law; 'there must be a substantial

conflict in evidence to support a jury question.'" *Tidwell v. Carter Products*, 135 F.3d 1422, 1425

(11th Cir. 1998) (quoting *Carter v. City of Miami*, 870 F.2d 578, 581 (11th Cir.1989)).


STATEMENT OF FACTS[2]

Martha Paschal contends that she was denied employment and employment opportunities

with the United States Postal Service because of her sex, female.  Pretrial Order (Doc. 15), p. 2.

Ms. Paschal was first hired by the Postal Service in May 1993, as a casual employee[3] in the

Motor Vehicle Service (hereinafter "MVS") department.  Defendant's Exh. 5 (Paschal Depo.), 14.

She was appointed as a transitional employee[4] (hereinafter "TE") in June 1994.  *Id.*  The one-year

---

[2]As required when determining a Motion for Summary Judgment, the Statement of Facts
reflects the facts in the light most favorable to Ms. Hoehn, the non-moving party.  All disputed
facts are resolved in her favor and all reasonable inferences arising from those facts are drawn in
her favor. *Lujan v. National Wildlife Federation*, 497 U.S. 871, 888-89, 110 S. Ct. 3177, 3188-
89, 111 L. Ed. 2d 695 (1990); *Zaben v. Air Products & Chemicals, Inc.*, 129 F.3d 1453, 1455
(11th Cir. 1997).

[3]"Casual employees are  not part of the regular workforce . . . .  They are non-career
employees with a limited term appointment . . .  Casual employees obtain no fringe benefits, no
leave, and are subject to termination at any time upon notice in writing."  Defendant's Exh. 1
(Nesbitt Aff.), ¶ 3.  Diana L. Nesbitt is a Human Resources Specialist for the Alabama District of
the United States Postal Service.  *Id.* ¶ 1.

[4]Transitional employees are hired on a temporary basis for a term not to exceed 359 days.
Transitional employees are used to fill vacant career positions in areas being eliminated due to
automation and part-time positions vacant due to attrition.  Defendant's Exh. 1, Att. 1.

TE appointment was renewed on June 26, 1995; but, the appointment was rescinded three days later when all TE positions in the MVS department were eliminated. Plaintiff's Exh. 13; Defendant's Exh. 2, ¶ 2.

Three employees were affected by the elimination of TE positions in the MVS department: Ms. Paschal (female), Reginald Key (male), and Frank Ramsey (male). Plaintiff's Exh. 13. All three were offered TE positions as letter carriers. Plaintiff's Exhs. 16, 17, 19. Ms. Paschal and Mr. Ramsey accepted the carrier positions. See Plaintiff's Exh. 20.

On September 7, 1995, Mr. Ramsey and Mr. Key accepted positions as TE's' in the MVS department. Defendant's Supp. Exh. I, p.2; Plaintiff's Exh. 21. The Postal Service contacted both men about the openings in the MVS department; it did not contact Ms. Paschal. Plaintiff's Exh. 21, Plaintiff's Exh. 6, ¶ 12; Plaintiff's Exh. 5 (Penny[5] Depo.), 35. The Postal Service has no procedure to announce openings for TE positions and the selection process appears entirely subjective. Plaintiff's Exh. 1, 88-89; Plaintiff's Exh. 4, p. 57. Ms. Paschal was not contacted about openings for TE's in the MVS department. Plaintiff's Exh. 6, ¶ 12.

During the last half of October 1995, while visiting the MVS department, Ms. Paschal saw Mr. Ramsey working in the MVS department and wearing a uniform of the Postal Service. Plaintiff's Exh. 26, Attach. p.3. Mr. Ramsey told Ms. Paschal that he had been recalled as a TE and was about to be promoted to a career position. *Id.* at 4. Previously, in January 1995, the Postal Service terminated Mr. Ramsey for failing to secure his vehicle, which resulted in two certified-mail pouches disappearing form his truck. Plaintiff's Exh. 8; Plaintiff's Exh. 1, p. 100. Also, Mr. Ramsey

---

[5]Rick Penny is a supervisor in the Transportion Operation in Birmingham, sometimes referred to as a dispatcher. Plaintiff's Exh. 1, p. 10.

had a year less experience than Ms. Paschal and, unlike Ms. Paschal, he was not qualified to drive

a tractor trailer.  Plaintiff's Brief, p.7; Plaintiff's Exh. 1, p. 95; Plaintiff's Exh. 5, p. 20.

During her October visit to the MVS department, Ms. Paschal did not see Mr. Key and,

therefore, did not know that he too had been recalled.

On November 9, 1995, Ms. Paschal filed an EEO Request for Counseling with the Postal

Service's Birmingham EEO Office.  Plaintiff's Exh. 26.  In this Request for Counseling, she

complained that she had been discriminated against because of her sex.[6]  Ms. Paschal complained

that she knew that Mr. Ramsey had been recalled but that she had not, despite the fact that the Postal

Service had her telephone number.  *Id.*, Attach. p.4.  She also complained that she was denied the

opportunity to take an in-house promotional examination, allegedly because she did not have a

veteran's preference, but other non-preference male employees have been allowed to that the

examination.  *Id.* Attach. p. 1.

The Postal Service issued Ms. Paschal a notice of her right to file a discrimination

complaint.[7]  And, on march 21, 1996, she filed a Complaint of Discrimination in the Postal Service.

Plaintiff's Exh. 28.  In this complaint, she alleged:

---

[6]Ms. Paschal also claimed that she had not filed anything earlier because she was afraid of retaliation.  Plaintiff's Exh. 26.  Although the Postal Service contends that she had a claim of retaliation, it does not appear that she contends she engaged in any protected activity prior to filing the Request for Counseling.  Moreover, the Complaint in this case does not contain a claim of retaliation for engaging in protected activity *before* she filed the November Request for Counseling.

[7]According to 29 C.F.R. § 1614.105(d), a Postal Service employee must be notified in writing by the EEO Counselor of "the right to file a discrimination complaint."  Thereafter, the employee must file a formal complaint of discrimination within 15 days of receipt of the notice. *Id.*

> I was passed over for a promotion to a permanent position because of my gender . .
> . . In July of 1995, I was told that TE lines in the MVS department were being
> eliminated. I was transferred to a letter-carrier position as a TE. No work was
> available. I later learned in October of 1995, that a male TE was retained in the MVS
> department. He was subsequently promoted to a career position.

*Id.*

Mr. Ramsey was not promoted to a career position. Defendant's Exh. 1, p.3 ¶ 12. Ms.

Paschal assumed that he had or was going to be promoted because he told her he was and because

he was wearing a Postal Service uniform. Plaintiff's Exh. 2, pp. 47-48. Uniforms, apparently, are

an indication of career status for an employee. Plaintiff's Exh. 5, p. 42.

The Postal Service issued its final decision on April 23, 1996, dismissing the retaliation claim

and accepting the sex claim for investigation. Plaintiff's Exh. 22, ¶ 4. The Postal Service dismissed

the sex discrimination claim on January 6, 1998 "due to pending civil action CV-97-[BU]-1902-S

which concerned same issues as the EEO complaint." *Id.* During the pendency of Ms. Paschal's

first complaint, Mr. Ramsey resigned his TE position. Plaintiff's Exh. 30. Ms. Paschal was not

contacted about filling this position. Instead, another male, Ronald A. Johnson, Jr., was appointed

on April 5, 1996. Defendant's Supp. Exh. I (Processing History of Johnson), p. 2.

On September 23, 1996, Ms. Paschal filed her second Request for Counseling. Plaintiff's

Exh. 32, p. 2. This Request states that Ms. Paschal had previously filed an EEO complaint and lists

the case number assigned to her first complaint by the Postal Service. *Id.* In the description portion

of the Request, Ms. Paschal wrote:

On August 28th, 1996, the following occurred:

> I visited the MVS Dept. Downtown GME. I spoke with Roland Fleming, evening
> shift dispatcher and asked about all the new employees I noticed were working in the
> dept. Mr. Fleming said the MVS dept. was "in a hiring frenzy." I said, "I wish

> they'd hire more TE's." Mr. Fleming said that MVS had hired TE's in addition to
> permanent employees. I Asked why wasn't I called or transferred & he relied,
> "Marty, I don't know."

*Id.* The Postal Service issued Ms. Paschal a notice of her right to file a discrimination complaint.

*Id.* at 1, 5. And, on February 3, 1997, she filed a second Complaint of Discrimination in the Postal

Service. Plaintiff's Exh. 34.

> In her second complaint, Ms. Paschal alleged:

> On Aug. 28, 1996, I learned that several male TE's had been hired to work during
> 1996. This is contrary to what I had been told about plans to hire TE's & permanent
> employees. Mike Renda knew I wanted to return to the MVS Dept. I was never
> contacted. I believe I was not contacted because I was a female & I had filed a prior
> EEO Complaint.

*Id.* The second complaint was dismissed on April 25, 1997, because the agency found that the issues

raised were "identical" to Ms. Paschal's first complaint, which was still pending. Plaintiff's Exh.

22, ¶ 4, p. 6.

In October 1996, Mr. Key was allowed to take an in-house examination for a career

appointment. Pretrial Order (Agreed Summary), p.2. As a result of his score on the in-house

examination, Mr. Key received a career position in the MVS department. *Id.* As of September 1998,

both Mr. Key and Mr. Johnson have received career appointments. Plaintiff's Exh. 22, ¶ 7. Indeed,

as of September 1998, the MVS department had zero female career employees.

Ms. Paschal filed a Complaint (Doc. 1) in this Court on July 24, 1997. In her Complaint, she

alleges sex discrimination because she was not promoted and/or she was not contacted or informed

about TE or career openings in the MVS department. Complaint, ¶¶ 26-29. She also alleges that

the Postal Service had retaliated against her by not informing her of TE openings in the MVS

department because she had filed an EEO complaint. *Id.* ¶¶ 33-36.

The Postal Service answered (Doc.2) and admitted that Ms. Paschal had satisfied the administrative prerequisites to bringing her gender discrimination claims and the retaliation claims occurring after she filed her first EEO complaint. Answer, ¶¶ 31, 37. Despite this admission, and its failure to raise the statute of limitations as an affirmative defense, the Postal Service's Position Statement contained in the Pretrial Order (Doc. 15) states, *inter alia*, that Ms. Paschal did not timely comply with the administrative prerequisites.

In her Complaint, Ms. Paschal requests compensatory and punitive damages, backpay, instatement[8] to a career position, and attorneys' fees, costs, and interest. Complaint, p. 6.

DISCUSSION

    A.    PUNITIVE DAMAGES

Ms. Paschal concedes that she is not entitled to punitive damages.[9]

    B.    GENDER DISCRIMINATION CLAIMS ARISING FROM PLAINTIFF'S FIRST ADMINISTRATIVE CHARGE[10]

Defendant contends that Ms. Paschal's first administrative complaint charges that the Postal Service discriminated against Ms. Paschal by hiring Mr. Ramsey as a career employee in the MVS department when Ms. Paschal was more qualified. Thus characterizing Ms. Paschal's first

---

[8]Ms. Paschal's Complaint requests "reinstatement" to a career position. Because Ms. Paschal has never held a career position, the more correct term would be "instatement."

[9]42 U.S.C. § 1981a(b)(1) provides for punitive damages for violations of Title VII, except as against "a government, government agency or political subdivision.".

[10]Defendant also seeks to dismiss Plaintiff's retaliation claim arising from her first administrative complaint. However, as Plaintiff concedes, she does not raise a claim of retaliation preceding her first administrative complaint. Defendant's Motion to Dismiss the claim of retaliation encompassed in Plaintiff's first administrative complaint must necessarily be denied. It is moot.

complaint, the Postal Service asks this Court to dismiss Ms. Paschal's claim because (1) Ms. Paschal

was not qualified for a career position and, therefore, there is no adverse employment action; and

(2) the Postal Service made no selection for a career position within 45 days of Ms. Paschal's first

complaint and, therefore, her complaint is time barred. Ms. Paschal contends that her complaint was

not limited to discrimination in hiring her for a career position. She contends her complaint

encompasses the recall of male TE's, such as Mr. Ramsey. Also, she contends that because male

TE's in the MVS department were allowed to take in-service examinations, they had a better

opportunity for selection to a career position. Thus, if Ms. Paschal had not been discriminated

against and had been recalled to the MVS department, she would be in a career position.

The standard in this Circuit for determining whether a judicial complaint exceeds the scope

of the EEOC charge was determined almost thirty years ago and has not changed. In *Sanchez v.

Standard Brands, Inc.*, 431 F.2d 455 (5th Cir. 1970),[11] the Old Fifth Circuit, quoting a district court's

opinion, held:

> As a general proposition, it is well established that the scope of an EEOC
> complaint should not be strictly interpreted. Such a generalization, however, does
> not answer the more precise question of what standard is to be utilized in measuring
> the proper scope of a complaint. This circuit has never before considered this precise
> question. At least one district court in this circuit has addressed itself to the question,
> however, and in our judgment it responded to the question by giving the correct
> answer. In *King v. Georgia Power Co.*, N.D. Ga. 1968, 295 F. Supp. 943, [Chief]
> Judge [Sidney O.] Smith held that *the allegations in a judicial complaint filed
> pursuant to Title VII "may encompass any kind of discrimination like or related to
> allegations contained in the charge and growing out of such allegation during the
> pendency of the case before the Commission."* 295 F. Supp. at 947. In other words,
> *the 'scope' of the judicial complaint is limited to the "scope" of the EEOC
> investigation which can be reasonably expected to grow out of the charge of*

---

[11]This case is binding precedent pursuant to *Bonner v. City of Pritchard*, 661 F.2d 1206,
1209 (11th Cir. 1981).

*discrimination*.

*Sanchez*, 431 F.2d at 466 (quoting *King*, 295 F. Supp. at 947; other quotations and citations omitted)(emphasis added).   The *Sanchez* decision continues to be the law in this Circuit.   *See Increase Minority Participation By Affirmative Change Today of Northwest Florida, Inc. (IMPACT) v. Firestone*, 893 F.2d 1189, 1196 (11th Cir.), *cert. denied sub nom., Secretary of State of Florida v. Walker*, 498 U.S. 847, 111 S. Ct. 133, 112 L. Ed. 2d 100 (1990); *Baker v. Buckeye Cellulose Corp.*, 856 F.2d 167, 168 (11th Cir. 1988); *Turner v. Orr*, 804 F.2d 1223, 1226 (11th Cir. 1986).

The Court has reviewed Ms. Paschal's first complaint and finds that it is sufficient to support her judicial complaint regarding discriminatory selection of TE's and that, but for the discrimination, she would be in a career position today.[12]  Defendant does not contend that Ms. Paschal was not qualified to fill a TE position in the MVS department, only that she was not qualified to fill a career position.  Apparently, she is disqualified from the career position *only* because she has not passed the service examination, and she claims that the male TE's that were recalled were allowed to take the examination under conditions more favorable to their passing the examinations.

Therefore, the Motion to Dismiss Ms. Paschal's gender discrimination claim related to selection of TE positions in MVS department in 1995 is due to be denied.   Ms. Paschal concedes

---

[12]The Postal Service also complains that Ms. Paschal's claim should be limited to career positions only because that was the issue set forth in a letter sent to Ms. Paschal, and that letter specifically instructed Ms. Paschal to notify the agency within seven days if she disagreed with the defined issues. Defendant's Supp. Exh. C, p. 3.  However, the Postal Service has presented no evidence that Ms. Paschal knew, within seven days after receiving this letter, that Mr. Ramsey – her named comparator – was not promoted to a career position.  Therefore, the evidence does not show that Ms. Paschal, as a matter of law, *knew* of *"sufficient reasons"* why the issues, as defined by the Postal Service, did not encompass her claims that she was treated differently than Mr. Ramsey on the basis of her gender.

she "is not claiming that in October 1995 she was discriminatorily denied a career position in the MVS department." Plaintiff's Brief, p. 34. However, Ms. Paschal may still establish her entitlement to instatement in a career position as part of any make-whole remedy if she can prove that – had she been selected in 1995 to a TE position – she would be in a career position now.[13] *See Robinson v. City of Fairfield*, 750 F.2d 1507, 1512 (11th Cir. 1985); *see also Locke v. Kansas City Power & Light Co.*, 660 F.2d 359, 368-69 (8th Cir. 1981).

The Postal Service also contends that Ms. Paschal's judicial complaint regarding gender discrimination in 1995 is untimely because no career positions were filled within 45 days of her first administrative complaint. As stated above, the first complaint is not limited to career positions, but also includes TE positions. Moreover, Ms. Paschal's first administrative complaint was timely filed as to the time she discovered the discrimination.

In employment discrimination cases, "the limitations period does not begin to run until the facts which would support a charge of discrimination are apparent or should be apparent to a person with a reasonably prudent regard for his rights." *See Sturniolo v. Sheafer, Eaton, Inc.* 15 F.3d 1023, 1026 (11th Cir. 1994)(citing *Reeb v. Economic Opportunity Atlanta, Inc.*, 516 F.2d 924, 931 (5th Cir.

---

[13]The evidence is sufficient to present a question that Ms. Paschal would be in a career position as of this date if she had been recalled at the same time as the male TE employees. *See Robinson v. City of Fairfield*, 750 F.2d 1507, 1512 (11th Cir. 1985)("[P]romotions, even if not sought and denied, are a legitimate consideration in Title VII cases for structuring remedies designed to make persons whole for injuries suffered through past discrimination."); *see also Darnell v. City of Jasper*, 730 F.2d 653, 655-56 & n.2 (11th Cir. 1984)(citing *Locke v. Kansas City Power & Light Co.*, 660 F.2d 359, 368-69 (8th Cir. 1981)(Court, in appropriate circumstances, can order a promotion or job-skipping as part of the make-whole relief; such circumstances include "where the beneficiary has demonstrated the skills or other qualifications legitimately required or the higher level job and the promotion is in a line of progression where a promotion is normally forthcoming after some interval of time in the lower level job.")).

1978); *Hill v. Metropolitan Atlanta Rapid Transit Auth.*, 841 F.2d 1533, 1545( 11th Cir. 1988))

Moreover, "[a] plaintiff who is unaware that he is being replaced in a position he believes he is able

to handle by a person outside the protected [class] knows enough to support filing a claim." *Id.*

(quoting *Blumberg v. HCA Management Co.*, 848 F.2d 642, 645 (5th Cir. 1988), *cert. denied*, 488

U.S. 1007, 109 S. Ct. 789, 102 L. Ed. 2d 781 (1989))(internal quotations omitted).

A Postal Service employee must "initiate contact with [an EEO] Counselor within 45 days

of the date of the matter alleged to be discriminatory." 29 C.F.R. § 1614.105(a)(1). This time period

may be extended "when the individual shows . . . that he or she did not know and reasonably should

not have . . . known that the discriminatory matter or personnel action occurred." *Id.* (a)(2).

The evidence shows that Ms. Paschal discovered that Mr. Ramsey had been re-employed in

the MVS department sometime in mid-late October, 1995. Plaintiff's Exh. 26, Attach. p. 3. The

EEO Request for Counseling was filed November 9, 1995. Plaintiff's Exh. 26. Ms. Paschal's first

administrative complaint was timely commenced as to the discriminatory failure to contact and/or

employ her in a TE position in the MVS department.

The Postal Service also asks this Court, in the alternative, to grant a summary judgment as

to Ms. Paschal's gender discrimination claims related to the 1995 complaint. It contends that Ms.

Paschal cannot show a *prima facie* case of discrimination for failure to hire her as a career employee,

because she was not qualified for a career position. Ms. Paschal concedes she is "is not claiming that

in October 1995 she was discriminatorily denied a career position in the MVS department."

Plaintiff's Brief, p. 34. The Postal Service does not contend that Ms. Paschal was not qualified for

a TE position. Therefore, the Court finds that the Postal Service has failed to establish that it is

entitled to judgment as a matter of law and has not shifted the burden on summary judgment to Ms.

Paschal. *See Clark*, 929 F.2d at 608.

The Motion for Summary Judgment as to Ms. Paschal's claims of gender discrimination with regard to the October 1995 TE positions is due to be denied.

C.  GENDER DISCRIMINATION CLAIMS ARISING FROM PLAINTIFF'S SECOND ADMINISTRATIVE COMPLAINT

The Postal Service asserts two grounds in support of its Motion to Dismiss and/or Motion for Summary Judgment: (1) Ms. Paschal's administrative complaint is not timely, and (2) Ms. Paschal did not apply for a TE position in the MVS department.

1.  TIMELY ADMINISTRATIVE COMPLAINT

The Postal Service contends that Ms. Paschal's second administrative complaint is not timely because the Postal Service did not appoint any TE's during the 45-day period preceding Ms. Paschal's second Request for Counseling, which was received by the EEO Counselor on September 23, 1996.

The evidence, however, is undisputed that Mr. Johnson was appointed on April 5, 1996, and Mr. Key was re-appointed on September 5, 1996. Ms. Paschal's complaint was timely as to all TE positions filled either (1) because her claim to these positions was reasonably expected to be considered in a diligent investigation of her first complaint, which was still pending, *see Griffin v. Carlin*, 755 F.2d 1516, 1522 (11th Cir. 1985), or (2) because the time for filing her second complaint did not begin to run until she discovered that TE positions had been filled in 1996, *see Sturniolo*, 15 F.3d at 1026. Moreover, this Court finds that the evidence submitted sufficiently shows that Ms. Paschal was diligent, under the circumstances shown by the record, in discovering the alleged

discrimination.

2.    APPLICATION PROCESS

The Postal Service contends that Ms. Paschal's claim of gender discrimination in failing to

hire her for a TE position in 1996 is due to be dismissed and/or a summary judgment granted

because Ms. Paschal cannot show that she "applied" for a TE position in 1996. However, showing

that she applied for the position is not always required.

The Eleventh Circuit has explained when and why an application is not required to make a

showing of discrimination. *Carmichael v. Birmingham Saw Works*, 738 F.2d 1126, 1132-34 (11th

Cir. 1984). In *Carmichael*, the employer "had no formal procedures for posting notice of available

promotions or for determining who would be offered the promotion." *Id*. at 1133. The Eleventh

Circuit held that the plaintiff did not have to prove that he had requested a "specific job, because he

had no way of knowing about its availability." *Id*. at 1132. Also, the Court held that an employer's

assumption that a plaintiff is uninterested in a position, and thus not considered, is legally

insufficient as a reason for the plaintiff's non-selection. *Id*. at 1134. The Court stated:

> To require this plaintiff to demonstrate an explicit expression of interest in
> specific jobs would also be at odds with the purposes of the prima facie case in
> analyzing evidence. The prima facie case raises a presumption of discrimination
> because it eliminates the common reasons for rejecting a job applicant: a lack of
> qualifications and a lack of an available job. The paradigmatic prima facie case,
> described in *McDonnell Douglas*[14] requires the plaintiff to prove that he "applied for"
> a job to eliminate another obvious nondiscriminatory reason: that the plaintiff was
> not offered the job because the complaint did not know he was interested.
> *McDonnell Douglas* aligns closely the prima facie case with proof of elements within
> the plaintiff's own objective knowledge. By showing that he applied, the plaintiff
> shows that the employer knew he was interested in the job. *But when there is no*

---

[14]*McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668
(1973).

*formal notice of the job's availability, the plaintiff may have no means, within his own knowledge, of showing whether the employer considered him or not. Furthermore, when an employer uses such informal methods it has a duty to consider all those who might reasonably be interested, as well as those who have learned of the job opening and expressed an interest.*

Accordingly, a plaintiff makes out a prima facie case – that is, he creates a presumption of discrimination and forces the employer to articulate legitimate reasons for his rejection – as long as he establishes that the company had *some reason or duty to consider him* for the post. The employer cannot avoid a Title VII violation by showing that it incorrectly assumed that the plaintiff was uninterested in the job. When the plaintiff had no notice or opportunity to apply for the job, such reason for rejection is *legally insufficient and illegitimate.*

*Id.* at 1133-34 (internal citations and quotations omitted).

The evidence in this case shows that the Postal Service had reason to know that Ms. Paschal was interested in returning to the MVS department as a TE employee. Moreover, the evidence is undisputed that male TE's employed in the MVS department were contacted by the Postal Service. Defendant cannot defeat Ms. Paschal's claims merely by asserting that she did not apply when the evidence shows that she was not aware of the job opening and that male TE's were not required to apply.

The Motion to Dismiss/Motion for Summary Judgment is due to be denied.

D.   RETALIATION CLAIMS ARISING FROM PLAINTIFF'S FILING OF HER FIRST COMPLAINT

The Postal Service's arguments for dismissing Ms. Paschal's retaliation claim are identical to the arguments advanced for dismissing her gender discrimination claims. Therefore, for the reasons set forth above, the Motion to Dismiss/Motion for Summary Judgment is due to be denied.

CONCLUSION

For the reasons set forth above, the Court finds that the Motion to Strike is due to be granted. The Motion to Dismiss and the Motion for Summary Judgment is due to be denied. The claims remaining are gender discrimination with regard to non-selection for 1995 TE positions in the MVS Department; gender discrimination with regard to non-selection for 1996 TE positions in the MVS Department; retaliation with regard to non selection for 1996 TE positions in the MVS Department. Ms. Paschal may also submit evidence that, as a matter of relief, had she been selected for a TE position, she could have taken an in-house examination and, under the same circumstances enjoyed by male TE's, she would have passed the examination and been promoted to a career position. However, Ms. Paschal does not have a claim for gender discrimination and/retaliation with regard to her non-selection for a career position. *See* Pretrial Order (Doc. 15), pp. 2-3. Moreover, the Court finds that the Complaint does not contain a claim for retaliation arising from protected activity before Ms. Paschal's 1995 Request for Counseling.

The Court will enter an Order contemporaneously herewith in accordance with this Memorandum of Opinion.

DONE this __13th__ day of April, 1999.

H. DEAN BUTTRAM, JR.
UNITED STATES DISTRICT JUDGE